UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN MELE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 21-cv-4477 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| | ) | |
| PAN-OCEANIC ENGINEERING, CO., INC., | ) | Hon. Sunil R. Harjani |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

Plaintiff Martin Mele, by his attorneys Anderson Law Offices P.C. and pursuant to the applicable rules of the Federal Rules of Civil Procedure, and an order of the Court, amends its complaint against defendant Pan-Oceanic Engineering Company, Inc., as follows:

**COUNT I
INTERFERENCE IN VIOLATION OF ERISA**

1. Jurisdiction is based on Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1140, and 28 U.S.C. §1331.

2. Venue is proper pursuant to Section 5l0 of ERISA, 29 U.S.C. §1140, and 28 U.S.C. §1391(a) and (b).

3. Plaintiff ("Mele") is a citizen of Illinois. Defendant ("POE") is a corporation organized under the laws of Illinois and based in Chicago. Both parties are located in this federal district. POE is a paving company

4. At all relevant times POE was and is signatory to a collective bargaining agreement ("CBA") with a labor organization known as Construction and General Laborers

1

District Council of Chicago and Vicinity (the "Union"), and which incorporates by reference the area agreement in force between Union and the Chicago area multi-employer bargaining association ("MARBA"). The CBA is attached hereto as Exhibit A.

5. Pursuant to the CBA and area agreement, POE was required to make contributions to various fringe benefit funds (the "Funds") for each hour worked. A true copy of the area agreement in effect for the period June 1, 2013 to May 31, 2017 is attached hereto as Exhibit B and is made a part hereof. Its predecessor, in effect from 2009 to 2013, identically addresses what hours are covered work. POE was bound to these agreements by virtue of it signing a CBA with the Union.

6. Mele was employed by POE as a laborer foreman in 2009, then became a job superintendent and thereafter a general superintendent. Each of these positions at all relevant times was a bargaining unit position under the CBA and the area agreements. Up to October 2012 POE paid contributions into the Funds for the hours he worked in each of these positions. Plaintiff left POE briefly in early 2012 but resumed working there in this same year in the general superintendent and site superintendent positions. He worked at POE in these positions until early 2017, when he retired.

7. At the time of the resumption of work at POE in late 2012, POE's President, Gulzar Singh, discussed with Plaintiff the continuation of working as a General Superintendent, despite a provision in the Funds pension plan that prohibited the performance of bargaining unit work by inactive members.

8. At the point in time in late 2012 when his work continued, POE shifted the payment of compensation for his work from normal payroll to indirect payments through an intermediary business entity, Vin-Mar Industries. Simultaneously POE ceased making

contributions to the Funds for Plaintiff's fringe benefits. This continued until early 2017.

9. Throughout the period 2012 to early 2017 Plaintiff worked as a General Superintendent, performing tasks at POE construction sites in the field, and additionally checking on each crew engaging in paving and other construction work, supervising employees, and otherwise managing POE jobs. These tasks were no different from those in the superintendent job he held up to early 2012.

10. With full knowledge of, and consistent with, Plaintiff's assignment to General Superintendent responsibilities, POE from late 2012 to early 2017 referred to Plaintiff as a General Superintendent and repeatedly included him as General Superintendent in communications that involved the supervision in the field of scheduling, management, and completion of projects. For example: a) in November and December 2012, e mails from POE management to customers referred to Plaintiff as the POE superintendent, b) in April and May 2013, POE management composed and sent e mails that identified Marty Mele as "our General Superintendent," and c) later in 2013, e mails referenced Plaintiff in this position, e.g, "our superintendent will be calling you" and "Marty was our superintendent at the jobsite" (See true copies of these e-mails, Group Exhibit C).

11. The referencing of Plaintiff as General Superintendent continued on a regular basis in 2014, 2015, 2016, and early 2017. In virtually all of these e mails, from 2012 to 2017, POE President, Singh, was in the "cc. chain" of recipients, and he received them. Singh replied to and copied these e mails online on more than one occasion. Additionally, Plaintiff during this period was identified on the POE website webpage, "Our Team," as General Superintendent (See Group Exhibit D).

12. In June 2017 the Funds advised POE that Mele's work for 2012 to early 2017 was

covered work under the CBA, and that POE owed contributions to the Funds for the hours he worked. Thereafter the Funds conducted an audit of POE's records and work practices and determined that POE was liable to the Funds in the amount of $209,522.36.

13. POE resisted the portion of the audit that identified unreported hours for Plaintiff's work for the years 2012 to early 2017. POE instead intentionally altered Plaintiff's work relationship, evidenced by a letter dated June 5, 2017, from POE legal counsel to Funds legal counsel. Defendant therein claimed that Plaintiff was in fact an employee of Vin-Mar Industries and had "worked as a consultant for [POE] and not a supervisor as contemplated by the collective bargaining agreement." A redacted version of this correspondence is attached hereto as Exhibit E to this Amended Complaint.

14. As the Funds were pushing in 2017 for a resolution of this audit with POE, it was also in conversation with Plaintiff about the stalled progress of these negotiations. After discussions with the Funds and a review of all relevant records, Plaintiff acknowledged his duty to restore to the Funds retirement benefits paid out to him while he was performing the covered with from 2012 to 2017 for POE.

15. POE continued to interfere with plaintiffs' rights by insisting that Plaintiff had not been doing bargaining unit work, but instead was a consultant. After cooperative discussion the Funds' legal counsel and Plaintiff arranged for his delivery to the Funds administrator of several volumes of annual, recorded field entries, each titled "Construction & Maintenance Daily Log." There was a separate volume for each year from 2012 to 2017.

16. On a daily basis Plaintiff had recorded in these logs information about his supervisory work and the status of projects in the field. For example, his entries for Tuesday, July 30, 2013 referred to seven different paving jobs that he was overseeing, e.g."Westtown – 3132

Start fine grading" and "Cermak – B.I. 3073, LPS finish power restoration". (Excerpt from 2013 log book, Exhibit F, attached hereto)

17. After an extensive review of these log books, which contradicted POE's position that Plaintiff herein had worked as a consultant, Funds legal counsel showed them to POE representatives. Singh, POE President, was furious that these log books had existed and were voluntarily provided to the Funds by Plaintiff.

18. Thereafter, at last realizing there was no longer any justification for altering plaintiffs work relationship and denying that plaintiff performed bargaining unit work, POE settled out the audit amount due for some of the hours Plaintiff worked. The Funds credited this amount to Plaintiff's account sometime in 2021.

19. Singh, knowing he could not sue the Funds to reverse the payment or argue that it was a big mistake, vowed to himself that he would sue Plaintiff to get this money back. This action was designed to be an indirect assault on the Funds and their trusts, and was a continuing interference with plaintiff's rights.

20. As is legally and contractually required of signatory employers with regard to benefit plans administered by trust funds in the construction industry, contributions to the Funds are credited to each participant's accounts. These include health and welfare coverage and pension benefits. Plaintiff was a participant in these benefit plans.

21. On March 21, 2020, POE sued Mele in the Cook County Circuit Court, for damages, alleging, *inter alia*, common law breach of an oral agreement, common law fraud, and unjust enrichment. POE at first alleged that Plaintiff and POE had made a mutual mistake. Plaintiff's motions to dismiss the initial complaint and a first amended complaint were granted. The state court denied a motion to dismiss a second amended complaint, is attached hereto (without

5

exhibits) as Exhibit G (the "State Court Suit").

22. The State Court Suit claims fraud and unjust enrichment and demands payment of the $209,522.36 disbursed by POE to the Funds, as stated above. POE in the State Court Suit claims that it believed plaintiff's alleged representation in October 2012 at an alleged meeting with Defendant's President that Plaintiff's hours worked from 2012 to 2016 were not "covered work." This suit flips the real events and claims that plaintiffs in fact worked as a consultant and did no bargaining unit work as an employee.

23. In the State Court Suit POE claims that Plaintiff during a single conversation in October 2012 intentionally misrepresented to the President of POE, an experienced union contractor, that Plaintiff's consulting work was not "covered work" under the POE, and that POE had reasonably relied on this single misrepresentation as a basis for continuously not paying contributions into the Union trust funds for the next three and a half years.

24. The undisputable fact is that the $209,522.36 payment was an obligation of POE under its CBA with the Laborers Union. POE's own records show that Mele during the 2012-2017 audit period was a General Superintendent, a position covered by the CBA. Mele's entitlement as a beneficiary to benefits under the Funds' benefit plans was a protected activity under ERISA, and his role as beneficiary was and is an exercise of his rights under an ERISA-governed benefit plan. The State Court suit was deliberately brought by POE to harass and interfere with Mele as a participant in these plans.

25. Section 510 of ERISA, 29 U.S.C. 1140 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [ 29 U.S.C.A. § 301 et seq. ], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the

plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. In the case of a multiemployer plan, it shall be unlawful for the plan sponsor or any other person to discriminate against any contributing employer for exercising rights under this chapter or for giving information or testifying in any inquiry or proceeding relating to this chapter before Congress. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

26. POE Violated Section 510 of ERISA by altering his employment statues and characterizing him as a consultant, thereby interfering with his entitlement to benefits under the law. POE's conduct was prohibited conduct taken for the purpose of interfering with Plaintiff's right to which he became or may have become entitled. The state court suit represents a deliberate effort to interfere with Plaintiff's attainment of benefits. If the state court were to rule against Plaintiff, it would be issuing a court order requiring Plaintiff to disgorge benefits belonging to him under federal law.

**WHEREFORE**, Plaintiff Martin Mele prays for judgment in his favor and against defendant Pan-Oceanic Engineering, Inc., and asks this Honorable Court for equitable relief, including:

a) an injunction restraining and prohibiting the court suit filed by the defendant against

plaintiff,

b) the award of attorney's fees and costs for Martin M. Mele's defense of that suit,

c) the award of attorney's fees and costs for prosecution of this suit, and

d) any other relief this Court deems proper.

                                              MARTIN M. MELE

                                              By: _____

                                              One of his Attorneys


Burr E. Anderson
Anderson Law Offices P.C.
400 Lake Cook Road, Suite 221-A
Deerfield, IL 60015
ARDC#   3121649
Telephone:  (312) 957-1100
burranderson@AndersonLawIL.com

8

## LIST OF EXHIBITS

| | | |
|---|---|---|
| Exhibit | A | Collective bargaining agreement |
| Exhibit | B | Area agreement 2013-2017 |
| Group Exhibit | C | Examples of e mails* |
| | | Doc 839 |
| | | Doc 892 – 3rd from top |
| | | Doc 1318 – 2nd from top |
| | | Doc 1327 |
| | | Doc 1732 |
| | | Doc 2181 |
| | | Doc 2224 – 2nd paragraph from top |
| | | Doc 2230 – 1st paragraph |
| | | Doc 2265 |
| | | Doc 2421 |
| Group Exhibit | D | Excerpts from Defendant's website |
| Exhibit | E | Letter from Defendant's counsel to Office of Funds Counsel, dated June 5, 2017 |
| Exhibit | F | Log book excerpt July 30, 2013 |
| Exhibit | G | Second Amended Complaint in State Court case (without exhibits) |

\* For easier access on those print-outs with multiple e mails, the reader is directed to the specific paragraph where Plaintiff is referenced.