## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MARTIN MELE,            ) | |
|            ) | |
|     **Plaintiff,**            ) | |
|            ) | |
|     **v.**            ) | **Case No. 21-cv-4477** |
|            ) | |
| **PAN-OCEANIC ENGINEERING CO.,**   ) | **Hon. Matthew F. Kennelly** |
| **INC.,**            ) | |
|            ) | **Hon. Sunil R. Harjani** |
|     **Defendant.**          ) | |

### DEFENDANT'S FED. R. CIV. P. 12(b)(6)
### MOTION TO DISMISS AMENDED COMPLAINT

The Defendant, Pan-Oceanic Engineering Co., Inc., by its attorneys, submits the following

Motion to Dismiss the Amended Complaint [Dkt. # 13] pursuant to Fed. R. Civ. P. 12(b)(6).

### SUMMARY AND FACTUAL BACKGROUND

On March 31, 2020, the Defendant field a lawsuit against the Plaintiff in the Circuit Court

of Cook County (case no. 2020 L 3734) (the "State Court Lawsuit"). On February 26, 2021, the

Defendant amended the State Court Lawsuit. [*See* Ex. G to Dkt. # 13]. In the State Court Lawsuit,

the Defendant alleged that, at an in-person meeting on October 17, 2012, the president of the

Defendant, Gulzar Singh ("Singh"), met with the Plaintiff at the Plaintiff's request to discuss the

Plaintiff's potential consulting work for the Defendant (the "Consulting Services"). [*See* Ex. G to

Dkt. # 13, ¶ 5-7]. At this meeting, the Plaintiff guaranteed to Singh that the work included in the

Consulting Services was not covered work as defined by the Fund because he was retired and

would not perform labor work. [*See* Ex. G to Dkt. # 13, ¶ 8]. Singh stated that he was unfamiliar

with what work was covered by the Fund. [*See* Ex. G to Dkt. # 13, ¶ 9]. In response to Singh,

the Plaintiff again assured Singh that the Consulting Services were not covered by the Fund. [*See*

Ex. G to Dkt. # 13, ¶ 9]. In fact, the Plaintiff stated that he "guaranteed" that this work was not covered by the Fund. [*See* Ex. G to Dkt. # 13, ¶ 8]. The Defendant then orally offered the Plaintiff employment to perform the Consulting Services which the Plaintiff orally accepted. [*See* Ex. G to Dkt. # 13, ¶ 10-13].

Following a Fund audit in June 2017, the Defendant discovered for the first time that the Plaintiff's representation that the Consulting Services were not covered was false. [*See* Ex. G to Dkt. # 13, ¶ 27-31]. As a result, the Fund required the Defendant to pay an additional $209,522.36 in benefit contributions, interest, and penalties, and the Plaintiff consequently receives health care and retirement benefits from the Fund. [*See* Ex. G to Dkt. # 13, ¶ 32-34].

The Defendant's Second Amended Complaint in the State Court Lawsuit contains two counts: (1) fraud; and (2) unjust enrichment. [*See* Ex. G to Dkt. # 13]. On July 16, 2021, Judge Margaret Ann Brennan of the Circuit Court of Cook County denied the Plaintiff's Motion to Dismiss the Second Amended Complaint pursuant to 735 ILCS 5/2-619.1 and held that: (1) the Defendant's claims were not barred by ERISA; (2) the Defendant sufficiently stated a claim for fraud; and (3) the Defendant sufficiently stated a claim for unjust enrichment. *See* Ex. 1.[1] The Plaintiff answered the State Court Lawsuit and admitted, *inter alia*, that he had discussions with the Defendant in 2012 about shifting payment from him to Vin-Mar Construction, Inc. ("Vin-Mar"). *See* Ex. 2, ¶ 5[2]; Ex. G, ¶ 5 to Dkt. # 13.

---

[1] A copy of the July 16, 2021 order entered in the State Court Lawsuit is attached here as **Exhibit 1**. The Court may take judicial notice of this order when considering the Defendant's Rule 12(b)(6) Motion to Dismiss. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (confirming that court documents from state proceeding are noticeable); *Pavone v. Meyerkord & Meyerkord, LLC*, 118 F. Supp. 3d 1046, 1055 n.5 (N.D. Ill. 2015) (holding that the Court "may take judicial notice of matters within the public record without converting a Rule 12(b)(6) motion into a motion for summary judgment.").

[2] A copy of the Plaintiff's Amended Answer and Affirmative Defenses in the State Court Lawsuit is attached here as **Exhibit 2** The Court may take judicial notice of this pleading when considering the Defendant's Rule 12(b)(6) Motion to Dismiss for the same reasons as stated in footnote 1, *supra*.

Crucially, the Plaintiff filed the instant lawsuit in Federal court only after its motion to dismiss the State Court Lawsuit was denied. Ex. 1. On August 23, 2021, the Plaintiff filed this lawsuit alleging that the Defendant violated the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001, *et seq.* ("ERISA") by: (1) inferring with the Plaintiff's entitlement to benefits in violation of Section 510 of ERISA by filing the State Court Lawsuit; and (2) retaliating against the Plaintiff in violation of Section 510 of ERISA by filing the State Court Lawsuit. [Dkt. # 1].

On October 21, 2021, the Defendant filed a motion to dismiss pursuant to Rule 12(b)(6). [Dtk. # 7]. In lieu of responding to the motion to dismiss, the Plaintiff sought and was granted leave to amend his complaint. [Dkt. # 12]. On January 3, 2022, the Plaintiff filed an Amended Complaint containing a single count alleging that the Defendant violated Section 510 of ERISA by inferring with the Plaintiff's entitlement to benefits by filing the State Court Lawsuit. [Dkt. # 13].

For the reasons stated more fully below, the Plaintiff cannot state a claim under Section 510 of ERISA. The Plaintiff did not correct any of the issues raised in the Defendant's initial motion to dismiss in his Amended Complaint. Namely, the Plaintiff does not allege that his employment status with the Defendant ever changed. The only basis for this lawsuit is that the Defendant filed the State Court Lawsuit seeking to hold the Plaintiff liable for fraud and unjust enrichment. The Plaintiff admitted that he and the Defendant discussed shifting of payment for his Consulting Services to Vin-Mar. The Defendant did not *change* the Plaintiff's employment status without the Plaintiff's knowledge to keep him from receiving benefits. In fact, the Plaintiff admits in his Amended Complaint that benefits were credited to the Plaintiff's account following the Fund audit in 2017. [Dkt. # 13, ¶ 18].

The Defendant alleged in the State Court Lawsuit that the Plaintiff defrauded the Defendant by lying about his eligibility and entitlement to benefits to procure employment from the Defendant. The Defendant did not interfere with the Plaintiff's receipt of benefits by filing the State Court Lawsuit; rather, the Defendant sought to recover damages for the fraud committed by the Plaintiff. The Defendant can collect from the Plaintiff for his fraud without implicating ERISA. An injunction by this Court staying the State Court Lawsuit as the Plaintiff requests would also violate federal law and abstention principles. Additionally, the Plaintiff's claims should be dismissed because the Plaintiff's allegations are conclusory. Lastly, the Plaintiff's prayer for relief should be stricken because there is no basis for the Plaintiff to recover attorney's fees and costs incurred in defending the State Court Lawsuit.

## LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, the Courts must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Even under a notice-pleading standard, some specific facts are required. *Id.* at 616-17.

**ARGUMENT**

**I.      The Plaintiff Cannot State a Claim for Interference under Section 510 of ERISA.**

The Plaintiff alleges that the Defendant violated Section 510 of ERISA by interfering with

his entitlement to benefits.  Section 510 of ERISA states in relevant part that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.  The Seventh Circuit in *Kampmier v. Emeritus Corp.*, 472 F.3d 930 (7th Cir.

2007) held that "[t]o recover under ERISA § 510, [the plaintiff] must demonstrate that 1) she is a

member of an ERISA plan, 2) she was qualified for the position, and 3) she was discharged under

circumstances that provide some basis for believing that [the defendant] intended to deprive her of

benefits." *Id.* at 943.  "[A] showing of specific intent to interfere with the participant's attainment

of benefits" is a required element for a Section 510 claim.  *Teamsters Loc. Union No. 705 v.

Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014).

The Seventh Circuit in *Teumer v. General Motors Corp.*, 34 F.3d 542 (7th Cir. 1994)

explained the difference between the interference and retaliation prohibitions in Section 510 of

ERISA holding that:

> Section 510 protects workers against several distinct abuses: the disruption of employment privileges to *prevent* (i.e. interfere with) the vesting or enjoyment of benefit rights—the wrong alleged in this case; the disruption of employment privileges to *punish* (i.e. retaliate for) the exercise of benefit rights; and the disruption of employment

privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act.

*Id.* at 547 (emphases in original).

Crucially, the Seventh Circuit in *Teumer* held that "Section 510 . . . does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations." *Id.* at 545 (emphasis in original). In other words, "[w]hen the alleged interference is not to the employment relationship which *gives rise* to an individual's [benefit] rights, § 510 is not implicated." *Id.* (internal quotation marks and citations omitted).

Based on the Seventh Circuit's pronouncements in *Kampmier* and *Teumer*, the Plaintiff cannot state a claim under Section 510 of ERISA because he does not allege a change in his employment status with the Defendant stemming from benefit-based motivations. The Plaintiff's allegation that the Defendant violated Section 510 of ERISA "by altering [the Plaintiff's] employment statues [*sic*] and characterizing him as a consultant" is specious. [Dkt. # 13, ¶ 26]. The Plaintiff alleged that he was employed by the Defendant. [Dkt. # 13, ¶ 6-8]. In 2012, the Defendant shifted the Plaintiff's compensation for the Consulting Services to Vin-Mar. [Dkt. # 13, ¶ 8]. In his answer to the State Court Lawsuit, the Plaintiff admitted that "discussions took place with Pan-Oceanic in 2012 [about] . . . shifting payment from [the Plaintiff] to Vin-Mar Construction, Inc." Ex. 2, ¶ 5; Ex. G, ¶ 5 to Dkt. # 13. Therefore, the shift in the Plaintiff's compensation was not a done by the Defendant without the Plaintiff's knowledge or consent. Indeed, the Plaintiff does not allege that the shifting of his pay to Vin-Mar was done without his consent. This shift in compensation was consistent with the parties new employment agreement for the Consulting Services that the Plaintiff procured from the Defendant in 2012. *See* Ex. G to Dkt. # 13. In June 2017, the Funds determined that the Plaintiff performed covered work and that

the Defendant owed benefit contributions, which the Plaintiff then received.  [Dkt. # 13, ¶ 12, 14, 18].

The fact that the parties specifically negotiated in 2012 an arrangement that would not require the Defendant to make benefits contributions does not give rise to an interference action under Section 510 of ERISA.  *See Teumer*, 34 F.3d at 545 ("Section 510 . . . does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations." (Emphasis in original)).  Moreover, the fact that the Plaintiff admits that he received benefits from the Fund thwarts any claim that he was *prevented* from receiving said benefits.  [Dkt. # 13, ¶ 18]. In the absence of allegations that the Defendant terminated the Plaintiff or that the Plaintiff's employment status changed, the Plaintiff cannot state a claim under Section 510 of ERISA.  *See Kampmier*, 472 F.3d at 943 (holding that a plaintiff must plead, *inter alia*, that he "was discharged under circumstances that provide some basis for believing that [the defendant] intended to deprive her of benefits.").

The Plaintiff misunderstands and misstates the allegations in the State Court Lawsuit.  The Defendant alleged in the State Court Lawsuit that the Plaintiff misrepresented that he would not be performing work covered by the Funds for the Plaintiff and that the Defendant reasonably relied on the Plaintiff's misrepresentations to its detriment because the Defendant would not have hired the Plaintiff had it known that his Consulting Services would result in an obligation to the Defendant to make contributions to the Fund since the costs of paying benefits would have far exceeded the value of the Consulting Services that the Plaintiff provided.  *See* Ex. G to Dkt. # 13, ¶ 8-25.  The state court acknowledged this distinction when it found that "[the Defendant's] claims are not barred by ERISA as [the Defendant's] claims do not dispute the validity of [the Plaintiff's]

collective bargaining agreement, but that [the Plaintiff] fraudulently acquired such benefits by inducing [the Defendant] to hire him knowing that [the Defendant] would be liable to the Fund." Ex. 1 at pg. 3. The State Court Lawsuit is not a predicate fact to support the element of specific intent. *See Teamsters Loc. Union No. 705*, 741 F.3d at 826 ("A § 510 claim requires a showing of specific intent to interfere with the participant's attainment of benefits.").

Case law from the Seventh Circuit further supports this position. For example, in *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002) an employee benefit plan participant was sued for fraud where it was alleged that he lied about the status of his ex-wife so that she would continue to be covered by his health insurance plan. *Id.* at 771. The court found that the fraud claim was not preempted by ERISA because "common law fraud claim does not implicate any of ERISA's fundamental concerns; *the Plan is merely the context in which Biondi's fraudulent conduct occurred*." *Id.* at 779 (emphasis added). Importantly, the court held that "a plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law." *Id.* at 781. The decision in *Biondi* illustrates that the Defendant was permitted to sue the Plaintiff for fraudulently obtaining benefits without implicating ERISA. *See Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1128 (7th Cir. 1990) ("Section 510 of ERISA is simply not the appropriate vehicle for redressing the unilateral elimination of severance benefits accomplished independently of employee termination or harassment.").

Moreover, the Plaintiff's request for "an injunction restraining and prohibiting the [state] court suit filed by the defendant against the plaintiff" is improper under federal law and the well-settled abstention principles. *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.");

*Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) ("Pursuant to

*Colorado River* [*Water Conservation District v. United States*, 424 U.S. 800 (1976)], a federal

court may stay or dismiss a suit in federal court when a concurrent state court case is underway,

but only under exceptional circumstances and if it would promote wise judicial administration.

The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial

resources and prevent inconsistent results." (Internal citations and quotation marks omitted));

*FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) ("The rule in *Younger v. Harris*

[, 401 U.S. 37 (1971)] is designed to permit state courts to try state cases free from interference by

federal courts. The *Younger* principles of abstention apply both to claims based on constitutional

challenges, as well as to those based on federal preemption challenges." (Internal citations and

quotation marks omitted)). The Federal lawsuit was only filed after the Plaintiff's motion to

dismiss the State Court Lawsuit was denied. *See* Ex. 1. This Court should not interfere or enjoin

the Defendant's permissible exercise of his legal rights in the State Court Lawsuit.

The Plaintiff's allegation that the Defendant engaged in "prohibited conduct" to interfere

with the Plaintiff's benefits is conclusory and misguided. The Plaintiff's pleading attempts to

relitigate the State Court Lawsuit and rehash the Fund audit. The Plaintiff's only basis for his

ERISA claim in the Amended Complaint is that the Defendant filed the State Court Lawsuit. The

fact that the Fund ultimately determined that the Plaintiff's Consulting Services to the Defendant

were covered work is not the point. In other words, the Fund's determination that the Plaintiff

performed covered work is irrelevant. Instead, it is relevant the Defendant alleged that the Plaintiff

procured employment from the Defendant based on the misrepresentation that he would not be

participating in covered work. [*See* Ex. G to Dkt. # 13]. The Defendant's fraud claim in the State

Court Lawsuit to recover for the Plaintiff's false statement is not interference that implicates ERISA. *See Biondi*, 303 F.3d at 781 ("[A] plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law.").

Beyond the references to being mischaracterized as a consultant, the Amended Complaint is vague as to how the Defendant interfered. For example, the Plaintiff alleges that the Defendant "intentionally altered Plaintiff's work relationship" and "continued to interfere" during the audit. [Dkt. # 13, ¶ 13, 15]. But the Plaintiff's agreement to perform the Consulting Services for the Defendant is not an alteration of his employment, nor is a shift in how the Plaintiff is compensated. The Plaintiff alleges that he voluntarily continued to work for the Defendant, seemingly without issue, until his retirement in 2017. [Dkt. # 13, ¶ 6]. The Plaintiff's claim that he was not a consultant is also bolstered by his own allegation that he had to return retirement benefits he received from the Funds from 2012 to 2017. [Dkt. # 13, ¶ 14]. If the Plaintiff thought he was a superintendent performing covered work, why did he collect retirement benefits from the Fund during that time?

Moreover, the Amended Complaint should be dismissed because the allegations are conclusory. "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal,* we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The Plaintiff's reference to the Defendant's "indirect assault on the Funds and their trusts" lacks any factual support and is nothing more than empty and inflammatory rhetoric.

Furthermore, the Plaintiff's allegations that "[t]he State Court [Law]suit was deliberately brought by [the Defendant] to harass and interfere with [the Plaintiff] as a participant in these

plans" lacks any factual foundation. [Dkt. # 13, ¶ 24]. Similarly, the Plaintiff fails to plead facts in support of its conclusions that the Defendant participated in "prohibited conduct" or that the State Court Lawsuit "represents a deliberate effort to interfere with the Plaintiff's attainment of benefits." [Dkt. # 13, ¶ 26]. This allegation is made even more unclear by the Plaintiff's prior allegation that he already received the benefits. [Dkt. # 13, ¶ 18]. Even under this Court's notice pleading standard, some specific factual allegations—not mere recitations of the elements of the plaintiff's claims—are required. *See McCauley*, 671 F.3d at 616 ("We have interpreted *Twombly* and *Iqbal* to require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." (*Quoting Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009))). Accordingly, the Amended Complaint should be dismissed.

## II.    The Plaintiff's Prayer for Relief Should be Stricken.

The Plaintiff's request in his prayer for relief for an award of attorney's fees and costs for the Plaintiff's defense of the State Court Lawsuit is baseless. There is nothing in 29 U.S.C. § 1132 that entitles the Plaintiff to this remedy. *See generally Marten v. Hewitt Associates*, 508 U.S. 248, 255 (1993) (holding that monetary damages are generally not available under ERISA).

Moreover, as stated above, the Plaintiff's request for an injunction enjoining the State Court lawsuit is inappropriate. *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). Therefore, the Plaintiff's prayer for relief should be stricken.

## CONCLUSION

The Plaintiff cannot get a second bite at the apple in his defense of the State Court Lawsuit. Well-settled law from the Seventh Circuit provides that the Plaintiff cannot seek relief under

Section 510 of ERISA where there was no change in his employment status with the Defendant. *See Teumer*, 34 F.3d at 545-47. The Plaintiff especially cannot receive the relief he seeks when his lawsuit seeks to improperly interfere in and enjoin the State Court Lawsuit and his allegations are conclusory. The Plaintiff cannot thwart the Defendant's legitimate access to the courts by enjoining the State Court Lawsuit appropriately aimed at seeking redress for the Plaintiff's fraudulent conduct. Accordingly, the Defendant respectfully requests that the Amended Complaint [Dkt. # 13] be dismissed with prejudice.

Marty J. Schwartz (#3124462)
Thomas J.K. Schick (#6330400)
Schain, Banks, Kenny & Schwartz, Ltd.
70 West Madison Street, Suite 2300
Chicago, Illinois 60602
(312) 345-5700
mschwartz@schainbanks.com
tschick@schainbanks.com

**PAN-OCEANIC ENGINEERING CO., INC.,**

By: /s/ Thomas J.K. Schick
        One of its attorneys

**CERTIFICATE OF SERVICE**

I, Thomas J.K. Schick, an attorney, certify that on February 4, 2022, I filed a true and correct copy of the foregoing and served the below-named attorneys through the ECF system:

To:    Burr E. Anderson (#3121649)
        Anderson Law Offices P.C.
        400 Lake Cook Road, Suite 221-A
        Deerfield, IL 60015
        (312) 957-1100
        burranderson@AndersonLawIL.com

                      /s/ Thomas J.K. Schick

# EXHIBIT
# 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| **PAN-OCEANIC ENGINEERING CO., INC.,** | | No. 20 L 3734 |
| **Plaintiff,** | | |
| | | **Commercial Calendar N** |
| **v.** | | |
| | | **Honorable Margaret Ann Brennan** |
| **MARTIN M. MELE,** | | |
| **Defendant.** | | |

### ORDER

This matter coming before the Court on Defendant Martin E. Mele's ("Defendant") Combined Motion to Dismiss Plaintiff Pan-Oceanic Engineering Co., Inc.'s Second Amended Complaint pursuant to 735 ILCS 5/2-619.1; the Court having considered the written submissions and being advised of the premises, finds:

### STATEMENT OF THE FACTS

This matter arises out of a dispute over the payment of benefit contributions, interest and fees by Plaintiff to the Laborer's Pension Fund (the "Fund"). Plaintiff entered into an oral agreement ("Agreement") with Defendant whereby Defendant would perform consulting services for Plaintiff. Defendant informed Plaintiff that his services were not covered by the Fund and would not result in payment of contributions to the Fund. After Defendant performed his work Plaintiff was notified by the Fund that Defendant's work was covered by the fund and Plaintiff owed the Fund benefits. The Fund performed an audit of Plaintiff, and it determined that Defendant had performed work under the Fund's agreement with Plaintiff. Plaintiff paid $209,522.36 in benefit contributions, interest and penalties to the Fund for work performed by Defendant. On February 26, 2021, Plaintiff filed its Second Amended Complaint alleging fraud (Count I), and unjust enrichment (Count II); Defendant now moved to dismiss pursuant to 735 ILCS 5/2-619.1

### ARGUMENTS OF THE PARTIES

Defendant argues that Counts I and II are time-barred as Plaintiff failed to file its claim within the five-year statute of limitations period. Defendant argues that Plaintiff should have known of his cause of action as early as October 12, 2012 but failed to file its claim until March 31, 2020. Defendant argues that the discovery rule does not toll Plaintiff's claims because Plaintiff should have known that Defendant was performing work covered under the Fund when Plaintiff designated Defendant as its General Superintendent. As such, Plaintiff could not rely on

1

Defendant's representations. At the very least Plaintiff should have known in 2015 that his injury had occurred. Next, Defendant argues that Counts I and II are preempted by federal law because Plaintiff is attempting to dispute amounts owed under an employee benefits plan covered by ERISA. Plaintiff's Complaint should also be dismissed pursuant to Section 2-615 as Plaintiff has failed to state a claim for relief. Defendant argues that Plaintiff has failed to allege reasonable reliance on Defendant's statements. Plaintiff is a sophisticated entity with years of experience in hiring union employees under its belt. Defendant argues that because its statements were easily verified and because Defendant performed work outside of the scope of the Agreement, Plaintiff should have known that Defendant's work was covered by the Fund. Additionally, Defendant argues that Plaintiff has not sufficiently pled promissory fraud as Plaintiff has not alleged a scheme to defraud. Finally, Defendant argues that if Count I is dismissed; Count II must also be dismissed because it is not an independent cause of action.

In response, Plaintiff argues that Counts I and II are not time-barred because the allegations in Plaintiff's Compliant that he did not learn that Defendant had performed covered work until June 2017 must be taken as true and have not been contradicted by Defendant. Plaintiff argues that it is irrelevant whether Defendant had knowledge that he was performing covered work because that knowledge is not imputed to Plaintiff. Defendant's title did not sufficiently apprise Plaintiff that Defendant was performing covered work. Second, Plaintiff argues its claims are not preempted by ERISA because the adjudication of Plaintiff's claims does not require interpretation of Defendant's rights under ERISA. Defendant's Section 2-615 arguments are flawed and should be disregarded by the Court. Plaintiff argues its reliance on Defendant's statement was reasonable under the circumstances. Whether Plaintiff could have determined the truth of Defendant's statements should not be decided on a motion to dismiss. Finally, as to Count II, Plaintiff argues it has sufficiently alleged facts to support a claim for unjust enrichment.

In reply, Defendant argues that Plaintiff possessed sufficient knowledge from its contract with the Fund, its years of hiring union employees, and its prior employment of Defendant that the work performed was covered work. Plaintiff cannot rely on Defendant's statements given the breadth of knowledge Plaintiff possessed. Defendant also argues that Plaintiff's claims are also barred under ERISA and are subject to dismissal under Section 2-619. Next, Defendant argues that Plaintiff has failed to allege a claim for fraud because Plaintiff could not have relied on Defendant's statements. Count II must be dismissed.

## OPINION OF THE COURT

A Section 2-615 motion attacks the legal sufficiency of a complaint. *Beahringer v. Page*, 204 Ill.2d 363, 369 (2003); *Weather-man v. Gary Wheaton Bank of Fox Valley, N.A.*, 186 111.2d 472, 491 (1999), The motion does not raise affirmative factual defenses, but rather alleges only defects on the face of the complaint. *Beahringer*, 204 Ill. 2d at 369. When considering a Section

2-615 motion to dismiss, pleadings are to be liberally construed so as to do justice between the opposing parties. *Abbott v. Amoco Oil Co.*, 249 Ill. App. 3d 774, 778 (2d Dist. 1993). All well pleaded facts within the four corners of the complaint are regarded as admitted and true, together with all reasonable inferences drawn in the light most favorable to the plaintiffs. *Id.*

When proceeding under a 2-619 motion, the movant concedes all well-pleaded facts set forth in the complaint but does not admit conclusions of law. *Piser v. State Farm Mut. Auto. Ins. Co.*, 405 Ill. App. 3d 341, 346 (1st Dist. 2010). In reviewing the sufficiency of the complaint, the Court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Porter v. Decatur Mem. Hosp.*, 227 Ill. 2d 343, 352 (2008). A Section 2-619 motion to dismiss should be granted only when it raises affirmative matter which negates the plaintiff's cause of action completely, or refutes critical conclusions of law, or conclusions of material but unsupported fact. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004).

Upon consideration the Court finds that Plaintiff's claims are not barred by ERISA as Plaintiff's claims do not dispute the validity of Defendant's collective bargaining agreement, but that Defendant fraudulently acquired such benefits by inducing Plaintiff to hire him knowing that Plaintiff would be liable to the Fund.

### Count I: Fraud

Sufficiently pleading a cause of action for fraudulent inducement, requires the plaintiff to allege facts supporting the following elements: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent to induce plaintiff to act; (4) the plaintiff's reasonable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (1st Dist. 1995). "Further, the reliance on the part of the plaintiff must have been justifiable." *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d 567, 571 (1st Dist. 1998).

A high standard of specificity is imposed on pleadings asserting fraud. *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 356 Ill. App. 3d 795, 803 (1st Dist. 2005). The plaintiff must state the facts constituting the alleged fraud with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer. *Id.* The pleading must contain specific allegations of facts from which fraud is the necessary or probable inference, including what representations were made, when they were made, who made the misrepresentations and to whom they were made. *Id.* at 803-04.

Upon consideration the Court finds that Plaintiff has alleged sufficient facts to state a cause of action for fraud. Plaintiff has satisfied a reasonable inference of the reliance element of its cause of action. As alleged by Plaintiff, Defendant performed work that Defendant stated was

not covered by the Fund, which has been shown to be an inaccurate statement at the very least. As such the motion to dismiss Count I is denied.

### COUNT II: Unjust Enrichment

The elements of an unjust enrichment claim are as follows: (1) the defendant has unjustly retained a benefit to the plaintiff's detriment; and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Unjust enrichment is based upon a finding of a contract implied in law. *Premier Elec. Constr. Co. v. LaSalle Nat'l Bank*, 132 Ill. App. 3d 485, 496 (1st Dist. 1984). As Plaintiff has stated a cause of action for fraud, therefore Count II remains.

Wherefore, it is hereby

ORDERED:

1. Defendant Martin M. Mele's Motion to Dismiss Count I-II of Plaintiff's First Amended Complaint is DENIED.
2. Defendant to answer by August 13, 2021.
3. This matter is set for status via zoom on September 2, 2021 at 10:00 a.m.

Entered:

Judge Margaret Ann Brennan        1846
Circuit Court of Cook County, Illinois
County Department, Law Division

Judge Margaret A. Brennan
JUL 16 2021
Circuit Court - 1846

# EXHIBIT

## 2

FILED
12/17/2021 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020L003734

16005439

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

FILED DATE: 12/17/2021 2:57 PM    2020L003734

| | | |
|---|---|---|
| **PAN-OCEANIC ENGINEERING CO., INC.** | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 2020L003734 |
| Plaintiff, | ) | Judge Brennan |
| | ) | |
| | ) | Calendar N |
| v. | ) | |
| | ) | TRIAL BY JURY REQUESTED |
| **MARTIN M. MELE,** | ) | |
| | ) | |
| Defendant. | ) | |

<u>**AMENDED ANSWER AND AFFIRMATIVE DEFENSES**</u>

NOW COMES Defendant, Martin M. Mele ("Defendant"), by and through his attorneys, Anderson Law Offices PC, for his amended answer and affirmative defenses to the Plaintiff's Second Amended Complaint (the "Complaint"), and respectfully answers, alleges, and states as follows:

<u>**ANSWER**</u>

**COUNT I**

1.      Admits paragraph 1.

2.      Admits paragraph 2.

3.      Admits paragraph 3.

4.      Admits that he is currently a member of the Laborer's Union, and denies that he "retired" from the Laborer's Union in 2012.

5.      Admits that discussions took place with Pan-Oceanic in 2012, but only regarding his continuing work functions as a General Superintendent and Site Superintendent, and shifting

FILED DATE: 12/17/2021 2:57 PM   2020L003734

payment from him to Vin-Mar Construction, Inc. All other allegations in this paragraph are denied.

6.      Denies, and states that on or about October 17, 2012, Mele discussed with Gulzar Singh ("Singh")  the continued performance of work and payment terms.

7.      Denies paragraph 7, and states that he did not initiate a meeting with Singh on October 17, 2012.

8.      Denies paragraph 8, and moves to strike "labor work" as ambiguous and vague.

9.      Denies paragraph 9, and states  that Singh first brought up the specific list of "Consulting Services" in 2015.

10.     Denies paragraph 10 and states that he was already employed by Plaintiff.

11.     Denies paragraph 11.

12.     Denies paragraph 12, and states that Plaintiff continued to assign work to Defendant as a General Superintendent and Site Superintendent on a continuous basis from 2012 to 2015.

13.     Denies paragraph 13.

14.     Denies paragraph 14, and states that the list of "Consulting Services" was first brought up by Singh in 2015.

15.     Denies paragraph 15, and states that his ongoing work as a General Superintendent and Site Superintendent was known by Plaintiff as "work covered by the Fund" or "covered work," as those phrases are used in the Complaint, and that Plaintiff reported these hours to the Funds in 2012.

16.     Denies paragraph 16 and states that he was already performing covered work as of October 2012, and that in that year Plaintiff was reporting his hours and paying contributions for the Funds on these hours.

FILED DATE: 12/17/2021 2:57 PM   2020L003734

17.     Denies paragraph 17, and states that Plaintiff as of October 2012 had such knowledge on what constituted "covered work" as that phrase is used in the Complaint, and was paying on this covered work.

18.     Denies paragraph 18.

19.     Denies paragraph 19.

20.     Denies paragraph 20, and states that Plaintiff knew that Defendant was performing "covered work," as that phrase is used in the Complaint, and was reporting his hours that year, prior to October 2012.

21.     Denies paragraph 21 of the Complaint, and states that Plaintiff as an experienced union contractor knew what constituted "covered work," as that phrase is used in the Complaint.

22.     Denies paragraph 22.

23.     Denies paragraph 23.

24.     Lacks sufficient information to admit or deny the state of mind, knowledge, or materiality of any information of Pan-Oceanic as a corporate entity, and therefore denies paragraph 24. Defendant states further that up to the time of the meeting to discuss method of payment for performing work in the field as a General Superintendent and Site Superintendent, Plaintiff was reporting Defendant's hours to the Union's Funds.

25.     Denies paragraph 25, and states that Plaintiff did not discuss a specific list of "Consulting Services" with Defendant until three years later, and that Plaintiff in 2012 obviously knew that Defendant was performing bargaining unit work because in September, October, and November 2012 it reported hours and made contributions to the Fund for this work performed by Defendant in July, August, and September 2012, respectively.

FILED DATE: 12/17/2021 2:57 PM   2020L003734

26.     Denies paragraph 26, and states that Defendant performed services for Pan-Oceanic as General Superintendent and Site Superintendent.

27.     Defendant admits that in or around June 2017, the Laborer's Pension Fund advised Pan-Oceanic that Mele's work through Vin-Mar for Pan-Oceanic was covered work under the collective bargaining agreement between Plaintiff and the Chicago Area Laborers District Council.

28.     Lacks sufficient information to admit or deny and therefore denies paragraph 28.

29.     Admits paragraph 29.

30.     Admits paragraph 30.

31.     Denies paragraph 31, and states that Plaintiff knew as of October 2012 and prior thereo, and that Plaintiff continuously assign Defendant covered work  from 2012 to 2015.

32.     Admits paragraph 32.

33.     Denies paragraph 33, and states that the requirement to pay was a logical and direct result of Plaintiff assigning Defendant covered work.

34.     Denies paragraph 34.

**WHEREFORE**, Defendant prays that Count I of the Second Amended Complaint be dismissed.

## COUNT II

35.     Defendant incorporates by reference his responses to paragraphs 1-34 of the Second Amended Complaint, as though fully set forth herein.

36.     Denies paragraph 36.

37.     Denies paragraph 37, and states that he is a participant in the Laborers Pension Fund and will receive retirement benefits under this Plan upon his retirement.

38.     Denies paragraph 38.

FILED DATE: 12/17/2021 2:57 PM    2020L003734

39.     Denies paragraph 39.

40.     Denies paragraph 40.

41.     Denies paragraph 41, and states that Singh did not bring up a specific list of "Consulting Services" until 2015, and that Plaintiff knew since before October 2012 that Defendant's services were "covered work," as that phrase is used in the Complaint.

42.     Denies paragraph 42.

**WHEREFORE**, Defendant prays that Count II of the Second Amended Complaint be dismissed.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

1.     Plaintiff had no basis for relying on the statements allegedly made by Defendant on October 17, 2012, and Plaintiff's claims are time-barred.

2.     Plaintiff has been union affiliated for over twenty years.

3.     In November 2010, Plaintiff was a named defendant in a federal lawsuit in the Northern District of Illinois, Eastern Division, Case No. 10-cv-7104, brought by the Laborers' Trust Funds and alleging Plaintiff's failure to make fringe benefit contributions on behalf of its employees covered by collective bargaining agreements with the Laborers' union (the "Union").  Its participation in this lawsuit exemplified its experience in dealing with "covered hours."

4.     A "short-form" of the collective bargaining agreement (or, respectively "CBA" and "Area Agreements") with the Construction & General Laborers' District Council of Chicago and Vicinity executed on September 21, 1999 was signed by Plaintiff's President, Gulzar Singh, and executed by Pan-Oceanic. A true and correct copy of this short-form agreement is attached as Exhibit A hereto.

FILED DATE: 12/17/2021 2:57 PM    2020L003734

5.      The CBA executed on September 21, 1999 was in effect during all times Mele performed services for Pan-Oceanic.

6.      The CBA, incorporating the Area Agreement, states in paragraph 4 that, "Employees covered by this Working Agreement shall retain all the work traditionally performed by members of the Union. The Employer agrees that it will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the Union."

7.      Plaintiff herein is the "Employer" referenced in the CBA executed on September 21, 1999.

8.      The Area Agreement in effect from June 1, 2013 to May 31, 2017, was a "successive collective bargaining agreement" as that term is used in the "short form" agreement executed on September 21, 1999. It succeeded an Area Agreement in effect from 2010 to 2013, and is attached as Exhibit B hereto, and these Area Agreements define covered work identically.

9.      On October 17, 2012, Singh knew Pan-Oceanic was subject to the "short form" agreement executed on September 21, 1999, and Pan-Oceanic administered it as an Employer by conformity to its provisions, with the exception of reporting Defendant's hours and paying contributions to the Fund for Defendant's hours after October 2012.

10.     At least one executive, director, or officer of Pan-Oceanic had knowledge of the CBA and the Area Agreement in effect on October 17, 2012 and interacted with the Union and Funds then and thereafter.

11.     Plaintiff knew it was subject to the "short form" agreement executed on September 21, 1999 or a successor agreement at the time of the alleged October 17, 2012 meeting and at all times thereafter.

FILED DATE: 12/17/2021 2:57 PM    2020L003734

12.     Pan-Oceanic was required to pay the Fund $209,522.36 pursuant to its obligations arising out of the CBA and the Area Agreement

13.     The alleged performance of marketing, business development, estimating and bidding, or project management were not job responsibilities that the Fund determined caused the deficiency in contributions totalling $209,522.36.

14.     From at least August 2010 to on or about October 14, 2012, Defendant held a number of roles at Pan-Oceanic Engineering Co., Inc., including labor foreman, project superintendent, and general superintendent, and all of the work performed by Defendant in these roles was covered under the CBA that obligated Plaintiff to pay contributions.

15.     From at least August 2010 to on or about October 14, 2012, Plaintiff paid contributions to the Fund pursuant to its obligations contained in the "short form" agreement and applicable Area Agreement for work performed by the Defendant for Pan-Oceanic.

16.     Continuing from October 14, 2012 and until March 10, 2015, Defendant was the General Superintendent and, on one or more projects, Site Superintendent for Plaintiff

17.      Defendant's roles as General Superintendent and Site Superintendent at Pan-Oceanic Engineering Co., Inc., entailed covered work under the CBA and Area Agreement.

18.     The result of the audit for the period 2012 to 2015 as performed by the Fund's auditor in 2017 revealed to the Fund that Defendant performed bargaining unit work and some  marketing, business development, project management, and estimating and bidding construction projects.

19.     Plaintiff, through its president and other management's knowledge, knew at the time of the alleged October 17, 2012 meeting what work was covered by the Fund, or what work performed on construction sites would otherwise trigger payment or contribution obligations to the Fund.

FILED DATE: 12/17/2021 2:57 PM    2020L003734

20.    The only change in the party's relationship after October 17, 2012 was that Plaintiff paid Defendant differently, and stopped reporting his hours.  The job duties remained the same.

21.    All individuals that have had the role of General Superintendent at Pan-Oceanic since its execution of the "short-form" agreement on September 21, 1999, have been union members.

22.    Defendant supervised, scheduled, and took responsibility for the work of one or more union laborers, union foreman, and union operating engineers at one or more construction sites for Pan-Oceanic after from October 17, 2012 to March 10, 2015.

23.    Under the CBA, supervising, scheduling, and being responsible for the work of one or more union laborers, union foreman, or operating engineers is the performance of work that is traditionally performed by union members at construction sites.

24.    Defendant was General Superintendent, Site Superintendent, or held a similar role, performing such supervision, scheduling, and responsibility for the work of union laborers, union foreman, and union operating engineers, on Pan-Oceanic Engineering, Co., Inc. construction sites for projects after October 17, 2012 including, listed by name and year of work commencement:

   a.  Harrison Park soccer field construction (2012)

   b.  Halsted Street reconstruction (2012)

   c.  West Lawn soccer field (2013)

   d.  Michigan Ave ADA Ramp Reconstruction (2013)

   e.  Industrial Street Sewer Reconstruction (2013)

   f.  90th Street Sewer Reconstruction (2013)

   g.  TSS parking lot for a City of Chicago maintenance facility (2013)

   h.  Sitework for Cardinal Square Development (2014)

FILED DATE: 12/17/2021 2:57 PM    2020L003734

     i.   71st Street Streetscape (2014)

     j.   Roosevelt Road Streetscape (2014)

     k.   Bridgeport Sewer Reconstruction (2014)

     l.   79th Street Sewer Installation (2014)

     m.   the construction of Maggie Daley Park (2014).

25.     From October 17, 2012 to at least March 10, 2015, Defendant was present in Plaintiff's office once or twice per month for the limited purpose of signing timecards or timesheets of union members, and provided those signed timecards or timesheets to Pan-Oceanic office employees. These timecards included the Pan-Oceanic employees' names who worked on the project, a brief work description of that employee, and the hours worked by that employee. All of this information was gathered by Defendant in the field.

26.     After October 17, 2012 and on or before March 10, 2015, Defendant was assigned projects, including those projects previously listed in this Answer, and acted as general superintendent, site superintendent, or similar role, upon notification from an employee of Pan-Oceanic Engineering Co., Inc., of a successful project bid and a notice to commence work. These employees included James Niemuth, Chief Estimator / Sr. Project Manager, Gulzar Singh, President, and others in the company office.

27.     Plaintiff's website, on various occasions from October 17, 2012 to March 10, 2015, stated that Defendant was Plaintiff's General Superintendent.

28.     After October 17, 2012, Plaintiff has represented Defendant as an employee of Plaintiff, and simultaneously omitted any disclosure of Defendant in-Mar as a sub-contractor or third-party contractor on any project bid response that required Plaintiff to provide a list or disclosure of sub-contractors or third-party contractors. This included but was not limited to responses to

FILED DATE: 12/17/2021 2:57 PM   2020L003734

bids invited by the City of Chicago.Plaintiff reported hours from and made contributions to the Fund for hours reported to have been worked by Defendant in every month from August 2010 to September 2012.

29.     In addition to ignoring its own extensive experience dealing with union trust funds and resources, Plaintiff on and after October 17, 2012 did not consult its legal counsel, the union trust funds, or even the collective bargaining agreement itself regarding the status of Defendant's continuous work. These were some of several ways available to Plaintiff to check and see if the work it assigned Defendant was or was not "covered work." Plaintiff had ample opportunities over a period of several years to confirm the correctness, or learn the incorrectness, of Defendant's alleged misrepresentations, and instead did nothing.

30.     Given the foregoing there was no reasonable basis for Plaintiff's reliance on the alleged statements made by Defendant on October 12, 2012.

31.     Plaintiff knew or should have known there was a fraudulent statement on or about October 12, 2012. Any claim of fraud or unjust enrichment should have been filed by October 12, 2017.

**WHEREFORE**, Defendant, Martin M. Mele, respectfully requests that this Court enter a judgment in his favor against Plaintiff, Pan-Oceanic Engineering, Co., Inc., dismissing all claims in Plaintiff's Complaint, plus awarding costs, and any further relief that the Court deems fair.

## SECOND AFFIRMATIVE DEFENSE – LACHES

29.     Incorporates by reference paragraphs 1 to 43 of Defendant's Counterclaims, as though fully set forth herein.

30.     The alleged conversation in which the alleged misrepresentation by Defendant occurred took place on or about October 17, 2012.

10

FILED DATE: 12/17/2021 2:57 PM    2020L003734

31.     After October 17, 2012, Plaintiff assigned work and roles to Defendant that it knew would implicate obligations in Plaintiff's collective bargaining agreement.

32.     After October 17, 2012, Plaintiff continued to assigned work and roles to Defendant that it had previously assigned to him and other union members working on other construction sites. Plaintiff made payments pursuant to the "short form" agreement and CBA as a result of this work performed by union members, and in fact reported and paid on Defendant's hours in 2012.

33.     After October 17, 2012, Plaintiff was aware of all work and roles performed by Defendant for Plaintiff.

34.     Plaintiff had notice and substantial knowledge of the Defendant's  performance of work that was covered under the  CBA and Area Agreement prior to and on  October 17, 2012 and on a continuing basis until 2017, with the opportunity to file a suit against Defendant for the allegations contain in the Complaint during that entire period.

35.     Defendant did not know that Plaintiff would file suit against Defendant for a statement made in a conversation in October 2012 because there was no discussion of the specific list of "Consulting Services" until 2015 and he was performing the same bargaining unit work that Plaintiff was reporting to the Funds in much of 2012. Furthermore Defendant had constant and routine daily interaction  with Plaintiff and Plaintiff's representatives until his work ceased for Pan-Oceanic in 2017.

36.     Defendant has been injured by the delay of Plaintiff in filing the claim because records and materials associated with describing the specific roles and tasks associated with projects in which he, Pan-Oceanic employees who were union members, and Pan-Oceanic sub-contractors, have been destroyed or lost.

FILED DATE: 12/17/2021 2:57 PM   2020L003734

37.     Defendant has been injured by the delay of Plaintiff's filing of the claim because Plaintiff's continued violation of its collective bargaining agreement caused the potential damages in this action to continue to grow.

**WHEREFORE**, Defendant, Martin M. Mele, respectfully requests that this Court enter a judgment in his favor and against Plaintiff, Pan-Oceanic Engineering, Co., Inc., dismissing all claims in Plaintiff's Complaint, plus awarding Defendant his costs, and any further relief that the Court deems fair.

### THIRD AFFIRMATIVE DEFENSE – LACK OF JURISDICTION

38.     Plaintiff's claim is pre-empted by the federal Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(e)(1) and (2).

39.     Plaintiff's claim represents an interference with Defendant's retirement and health and welfare benefits as duly determined and held in trust by trust funds jointly administered by the Chicago District Council of Laborers and signatory employers (the "Funds").

40.     Plaintiff voluntarily paid the sum complained of herein to the trust funds after an audit conducted by the trust funds' outside accountants.  Plaintiff's complaint seeks to gut the benefits held in trust by the Funds.

41.     Furthermore, Plaintiff is retaliating against Defendant in violation of ERISA.  It is avoiding the obvious obligation it had as an  experienced union company to confirm whether Defendant's work was "covered work."

**WHEREFORE**, Defendant, Martin M. Mele, respectfully requests that this Court enter a judgment in his favor against Plaintiff, Pan-Oceanic Engineering, Co., Inc., dismissing all claims in Plaintiff's Complaint, plus awarding costs, and any further relief that the Court deems fair.

FILED DATE: 12/17/2021 2:57 PM   2020L003734

**FOURTH AFFIRMATIVE DEFENSE – FAILURE OF DUTY TO MITIGATE**

42.     Beginning at the time of the alleged misrepresentation, and in each month thereafter, Plaintiff had a duty as an experienced construction firm with a long-standing collective bargaining relationship to assure that it was in compliance with the CBA and the Area Agreement.

43.     By maintaining compliance it would avoid underpayment to the trust funds and injury to its union members performing covered work.

44.     Based on the alleged misrepresentation by Defendant in October 2012, and the ongoing acknowledgement that the work in question was covered work and was reported by Plaintiff, it was required to make inquiry to confirm the correctness, or to discover the incorrectness, of the alleged misrepresentation.

45.     Plaintiff's inaction with each passing month caused injury to the Funds and to Plaintiff. Had it complied with its responsibilities under the CBA and Area Agreement, the amount of the alleged injury to Plaintiff, and its claim of reimbursement herein, would have been zero.

        **WHEREFORE**, Defendant, Martin M. Mele, respectfully requests that this Court enter a judgment in his favor against Plaintiff, Pan-Oceanic Engineering, Co., Inc., dismissing all claims in Plaintiff's Complaint, plus awarding costs, and any further relief that the Court deems fair.

**FIFTH AFFIRMATIVE DEFENSE –**

**INDEPENDENT DUTY TO MAKE CONTRIBUTIONS**

1.      Plaintiff was bound by its collective bargaining agreement to comply with the results of the audit unless it presented challenges to audit that had merit and were accepted by the

FILED DATE: 12/17/2021 2:57 PM    2020L003734

Union Funds.  Plaintiff made no challenges of merit that were accepted as to the amount in controversy herein.

2. The obligations under the collective  bargaining agreement to pay the audit amount ran from Plaintiff to the Laborers Union Trust Funds.  These obligations were not the responsibility of Defendant.  The law does not permit signatory union employers to claw back benefit monies from participants in benefit plans the employers are bound to contribute to.

3. Plaintiff presented no valid challenges to the Funds and paid the amount due, and has not sued the Funds for mistake or overpayment.  Plaintiff understandably did not present the argument to the Funds that it had not paid the contributions for the entire time based on a meeting four years earlier when the employee allegedly said Plaintiff did not have to do so.  Had Plaintiff made this plea, the Funds would logically have rejected it, since an employee's opinion about covered hours would hardly trump the CBA, direction from the Funds if asked, or any other authoritative source of guidance.

4. Plaintiff had an independent contractual duty to comply, it had sat on its rights passively, and the hours in question were covered work at all relevant times.  The instant claim should be dismissed.

FILED DATE: 12/17/2021 2:57 PM    2020L003734

## **DEMAND FOR JURY TRIAL**

Defendant hereby demands a 6 person jury trial as provided by 735 ILCS 5/2-1105.

Dated:  December 17, 2021.

**Respectfully submitted,**

Martin M. Mele

By: _____

*One of the Attorneys for Defendant*

Burr E. Anderson
Anderson Law Offices PC
400 Lake Cook Road - Suite 221-A
Deerfield IL 60015-4930
(312) 957-1100
BurrAnderson@AndersonlawIL.com
Cook County # 37303
ARDC #: 3121649