**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARTIN MELE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21 C 4477** |
| | ) | |
| **PAN-OCEANIC ENGINEERING CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Martin Mele has sued Pan-Oceanic Engineering Co. (POE) for interfering in his attainment and receipt of retirement benefits, in violation of section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140. Mele alleges that POE retroactively reclassified him from a general supervisor (an employee position) to a consultant (an outside contractor position) to prevent his work from 2012 to 2017 from being considered covered work under a union contract and thus subject to pension and fringe benefit contributions. Mele also alleges that POE sued him in state court to interfere with his attainment and receipt of retirement benefits for the work in question.

POE is a signatory to a collective bargaining agreement (CBA) with the Construction and General Laborers District Council of Chicago and Vicinity. Under the CBA, POE was required to contribute to various benefit funds (the Funds) for each hour of covered work as defined by the CBA. The CBA also prohibited POE from hiring non-

union workers to perform covered work.

Mele worked for POE as a laborer foreman in 2009. After that, he worked for POE as a job superintendent and later as a general superintendent, until 2012. POE paid contributions to the Funds for all of that work. Mele alleges in his complaint that in 2012, he "left POE briefly . . . but resumed working there . . . in the general superintendent and site superintendent positions," until early 2017, when he says he retired. Am. Compl. ¶ 6. Mele says that when he resumed working at POE in 2012, the company's president discussed with him continuing as a general superintendent, "despite a provision in the Fund's pension plan that prohibited the performance of bargaining unit work by inactive members." *Id.* ¶ 7. Mele further alleges that POE "shifted the payment of compensation for his work from normal payroll to indirect payments through an intermediary business entity, Vin-Mar Industries." *Id.* ¶ 8. At that point, Mele states, POE stopped contributing to the Funds on his behalf, even though he was performing the same work as before his brief hiatus. Mele alleges that the work he performed from 2012 to 2017 constituted covered work under the CBA for which pension and fringe benefit contributions were required.

In 2017, the Funds advised POE that it owed contributions for all of Mele's work from late 2012 and that, as a result, the POE owed the Funds $209,522.36. In response, POE claimed that Mele was a consultant who worked for Vin-Mar Industries and that he did not do any work for POE that was covered by the CBA. Mele then provided the Funds with documentation that contradicted POE's contention, specifically a logbook that contained a summary of his day-to-day work from 2012 to 2017. Once this came to light, Mele alleges, POE paid the Funds the amount they claimed was due.

In 2020, POE filed a lawsuit against Mele in Illinois state court. In the lawsuit, POE alleges that Mele actually retired in 2012 and that, post-retirement, he and POE mutually agreed that he would perform work for the company as a consultant. POE alleges in the state-court lawsuit that during the negotiations that led to his return to the company, Mele represented to POE's owner that the work he would be performing was not covered work under the CBA because he was retired. POE contends it relied on this when it hired Mele in 2012. POE alleges in the state-court lawsuit that Mele knew that what he told POE was false, specifically, he knew the work he would be performing was in fact covered work under the CBA. POE contends it was damaged in the amount—$209,522—that it was ultimately forced to contribute to the Funds on Mele's behalf.

In the present lawsuit, Mele alleges that POE, in "altering his employment [status] and characterizing him as a consultant," and in suing him in state court, has interfered or attempted to interfere with his entitlement to and attainment of pension benefits. *See* Am. Compl. ¶ 26. Mele's suit is filed under section 510 of ERISA, which provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. . . .

29 U.S.C. § 1140. Mele seeks an injunction prohibiting POE from pursuing the state court suit that it filed against him. He also seeks an award of attorney's fees and costs for his defense of the state court suit and for the prosecution of the present suit, along

with "any other relief this Court deems proper." Compl., p. 8. POE has moved to dismiss Mele's claims under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

On a motion to dismiss for failure to state a claim, a court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and assesses whether the plaintiff has asserted a plausible basis for relief. *Ashcroft v. Iqbal*, 556 US 662, 679 (2009); *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## 1. Recharacterization of status

To sustain a claim of interference under section 510 of ERISA, a plaintiff "must establish more than a loss of benefits; [he] must demonstrate that [his] employer[ ] [acted] with the specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). This requires the plaintiff to establish that the employer's actions were motivated by "a desire to frustrate attainment or enjoyment of benefit rights." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). "Section 510 does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's employment status cannot stem from benefit-based motivations." *McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665, 668–69 (7th Cir. 1993).

The claimed "reclassification" of Mele's status from employee to independent contractor may be viewed as amounting to termination of his employment status and

4

thus as the sort of action that can trigger section 510.  In this sense the case is similar to *Isbell*, in which the plaintiffs alleged that eliminating employees who performed a particular function and replacing them with independent contractors—and offering the contractor position to those previously classified as employees—ran afoul of section 510.  *Isbell*, 418 F.3d at 796.

Mele contends that when POE classified him as a consultant in 2012, it was a deliberate attempt to interfere with his entitlement to benefits protected under ERISA. Am. Compl. ¶ 26.  Mele argues that his work as a General Superintendent was covered work under the CBA and that POE's reclassification of his work as that of an independent contractor was an attempt by POE to prevent him from accruing benefits for performing covered work.  Mele contends that following his reclassification as an independent contractor, he was doing the same work that he had performed as General Superintendent, when he had the status of an employee.  The key difference was that POE could avoid paying him retirement benefits for work he did as an independent contractor.  *See Seaman v. Arvida Realty Sales*, 985 F.2d 543, 547 (11th Cir. 1993) (employer threatened to terminate workers unless they "willingly" converted to independent contractors; employer's actions stemmed from a desire to save money by avoiding payment of fringe benefits).

Mele's complaint plausibly alleges that POE reclassified him as an independent contractor with the intent to interfere with his attainment or receipt of benefits covered by ERISA.  For this reason, the Court declines to dismiss his claim under section 510 to the extent it is based on the claimed reclassification.

2.      **State court lawsuit**

The Court next addresses what seems to be the primary basis for Mele's section 510 claim, specifically POE's filing and prosecution of the state court lawsuit in which it seeks to recover the amount POE had to pay to the Funds for Mele's work after his hiatus. POE argues, among other things, that filing and maintenance of a lawsuit is not the sort of conduct addressed by section 510.

Section 510, by its language, is not an open-ended prohibition against interference with or retaliation for exercise of one's rights under ERISA or claiming benefits. Rather, it prohibits only certain types of retaliatory conduct—specifically, "discharge[ing], fin[ing], suspend[ing], expel[ling], disciplin[ing], or discriminat[ing]" against a participant or beneficiary for exercising his rights. 29 U.S.C. § 1140. Filing a lawsuit for recovery of benefits or benefit contributions is not among the types of actions that the statute prohibits. The only term in the statute that comes anywhere close is the prohibition on "discriminating." But in this case there is no claim of discrimination—that is, Mele does not claim he was treated differently from someone else who was similarly situated aside from claiming or collecting benefits.

The Seventh Circuit has stated that section 510 "*protects employment relationships from disruptions* designed to frustrate the vesting of benefit plan rights or the continued enjoyment of rights already vested but yet to be partaken" (emphasis added) and, more to the point, that the statute "does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations." *Teumer v. Gen. Motors Corp*., 34 F.3d 542, 544–45 (7th Cir. 1994). POE's filing of a

6

lawsuit against Mele does not qualify as a change or attempted change in his employment status. The Court therefore dismisses Mele's claim to the extent it is premised upon POE's filing and prosecution of the state court lawsuit. This renders moot several of POE's other arguments regarding the nature of appropriate relief to the extent his claim arises from the state court lawsuit.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion to dismiss [19] in part and denies it in part. Plaintiff's claim under 29 U.S.C. § 1140 is dismissed to the extent it is premised upon defendant's filing and prosecution of a lawsuit against him. The Court otherwise denies the motion to dismiss. Defendant is directed to file an answer by no later than May 25, 2022. The case is set for a telephonic status hearing for the purpose of setting a discovery cutoff date and any other appropriate deadlines, on May 23, 2022 at 9:20 a.m., using call-in number 888-684-8852, access code 746-1053.

Date: May 11, 2022

MATTHEW F. KENNELLY
United States District Judge